UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TANYA BRITTON                                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO: 3:11-CV-483-DPJ-FKB

UNIVERSITY OF MISSISSIPPI MEDICAL
CENTER, CECILIA BASS, MELINDA LAWSON,
CONNIE RICHARDSON, BARBARA SMITH,
SHIRLEY DAVENPORT, as agents, servants and
employees of the UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER, and in their individual capacities
under 42 U.S.C. § 1983, and JOHN or JANE DOES
A, B, C, D, etc., et al.                                                         DEFENDANTS

ORDER

    This First Amendment employment-discrimination case is before the Court on the

disputed motions to dismiss filed by defendants Cecilia Bass [8], Shirley Davenport [10],

Melinda Lawson [12], Connie Richardson [14], and Barbara Smith [16] in their individual

capacities based on qualified immunity and immunity under the Mississippi Tort Claims Act.

Having fully considered the parties' submissions and the relevant authority, the Court finds that

the Amended Complaint fails to adequately allege claims against Davenport and Smith so their

motions are granted.  Bass's, Lawson's, and Richardson's motions are granted in part and

otherwise denied.

I.      Facts and Procedural History

    Britton is a registered nurse who asserts that Defendants retaliated against her for refusing

to perform services that violated her religious beliefs.  In October 2003, Britton began

employment at the Wiser Hospital for Women and Infants ("Wiser") of the University of

Mississippi Medical Center ("UMMC").[1]  She worked full time in the postpartum unit, caring for patients immediately after labor and delivery, and was occasionally assigned to work in the antepartum and gynecology oncology units.  As alleged in her Amended Complaint, Britton "is a Catholic Christian who sincerely believes and follows the teachings of her religion that abortion, contraception, and sterilization, as well as cooperation in or with those acts, are morally wrong and gravely sinful."  Am. Compl. [1-1] ¶ 10.  Britton therefore declined to provide prescribed contraceptives to patients or participate in sterilizations.  She also advised her supervisors, including defendants Richardson and Lawson, that she would not participate in abortions.

Britton alleges on information and belief that defendant Davenport filed an occurrence report stating that Britton had not provided contraception to a patient.  As a result, on February 8, 2010, defendant Lawson allegedly reassigned Britton from the 7 a.m.–3 p.m. shift to the 3 p.m.–11:30 p.m. shift.  Britton alleges that this shift was less desirable "due to pre-existing obligations most week-day evenings."  *Id.* ¶ 14.

On March 29, 2010, defendant Bass, an HR generalist at UMMC, met with Britton and Defendants Richardson and Lawson.  In this meeting, Bass presented a letter that "recited certain alleged 'accommodations' offered by UMMC, including working on the nursing resource team (in the main hospital rather than Wiser) or in labor and delivery in Wiser."  *Id.* ¶ 15.  According to Britton, the offered accommodation of working on the nursing resource team involved a "punitive shift change with unfavorable hours":  12 hour shifts, rotating days and nights, and working every other weekend, compared to her regular 8–12 hour day shifts, not working on Sundays.  *Id.* ¶ 18.  Moreover, the offer to work in labor and delivery was "expressly conditioned

---

[1]The facts included herein are taken from the Amended Complaint [1-1].

on Britton's willingness to assist in 'permanent sterilization procedures.'" *Id.* ¶ 19.  Britton avers

that she was never required to perform or assist in those procedures when she previously worked

in labor and delivery, and that other nurses had performed them in her stead.

Britton declined the proposed accommodations and her employment was terminated.

According to Britton, the termination letter states that she was offered accommodations because

she was "not able to administer certain medications (i.e. potentially abortifacient birth control

injections)." *Id.* ¶ 17.  Britton "believes that Cecilia Bass, Melinda Lawson, Connie Richardson,

Barbara Smith, and Shirley Davenport were involved in the decisions pertaining to the shift

change, reassignment and termination of her employment." *Id.* ¶ 24.  Later, Britton's application

for unemployment benefits was denied because she declined to accept another job offered to her

by UMMC.

Following the termination of her employment, Britton filed this suit in the Circuit Court

of Hinds County, Mississippi, against UMMC and Bass, Lawson, Richardson, Smith, and

Davenport (the "Individual Defendants").  As to each, Britton asserts a statutory claim under the

Mississippi Rights of Conscience Act ("Conscience Act"), Miss. Code Ann. §§ 41-107-1 through

-13, plus common law claims for "Wrongful (Tortious) and Retaliatory Dismissal" and

intentional infliction of emotional distress ("IIED").  She also asserts a tortious breach of contract

claim against UMMC, *id.* ¶¶ 29–33, and the following claims against the Individual Defendants

in their representative and individual capacities: (1) a § 1983 claim for violating her First

Amendment rights to freedom of religion and freedom of speech, as well as her Fourteenth

Amendment right to equal protection of the law and due process, related to the alleged adverse

employment actions, creation of a hostile work environment, and intentional discrimination; and (2) conspiracy to violate 42 U.S.C. § 1983.

Defendants removed the case to this Court, and the Individual Defendants now seek dismissal of Britton's claims against each of them in their individual capacities, asserting qualified immunity as to all federal claims and immunity under the Mississippi Tort Claims Act ("MTCA") as to all state claims. *See* Bass Mot. to Dismiss [8]; Davenport Mot. to Dismiss [10]; Lawson Mot. to Dismiss [12]; Richardson Mot. to Dismiss [14]; Smith Mot. to Dismiss [16]. Britton opposes [21, 22] the Individual Defendants' motions. The Court has personal and subject matter jurisdiction and is prepared to rule.

II.    Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).[2] To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "A

---

[2]The Individual Defendants fail to invoke explicitly any Federal Rule in their motions to dismiss. Because they filed an Answer [4], the Court assumes Rule 12(c) is the applicable rule. *See Jones v. Greninger*, 188 F.2d 322, 324 (5th Cir. 1999). The standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as that under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 n.8 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same.").

4

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

The Supreme Court's examination of the issue in *Iqbal* provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

III.   Analysis

A.    Federal Claims

The issue is whether the Individual Defendants are entitled to qualified immunity from Britton's § 1983 claims. Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635,

5

638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those

who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is

"an entitlement not to stand trial or face the other burdens of litigation."  *Austin v. Johnson*, 328

F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  When a

defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hampton*

*v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).

      Courts deciding qualified immunity employ a two-part test.  *Atteberry v. Nocona Gen.*

*Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  First, plaintiff "must claim that the defendants

committed a constitutional violation under current law."  *Id.* (citing *Wilson v. Layne*, 526 U.S.

603, 609 (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999)).  Second, plaintiff

"must claim that the defendants' actions were objectively unreasonable in light of the law that

was clearly established at the time of the actions complained of."  *Id.*  "The defendant's acts are

held to be objectively reasonable unless all reasonable officials in the defendant's circumstances

would have then known that the defendant's conduct violated the United States Constitution or

the federal statute as alleged by the plaintiff."  *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447,

457 (5th Cir. 2001).  "An official is eligible for qualified immunity even if the official violated

another's constitutional rights."  *Id*.  The objective reasonableness of official action is an issue of

law reserved for the court.  *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

      The Individual Defendants cite these standards in their initial memoranda but fail to

specifically apply them to Britton's claims.  They instead rely on the somewhat narrow argument

that Britton merely "speculates" that the Individual Defendants were involved in the alleged

constitutional violations.  They conclude that mere "speculation cannot form the basis for a

constitutional challenge nor can it support a claim under Mississippi law." *See* Bass Mem. [9] at 4–5; Davenport Mem. [11] at 4–5; Lawson Mem. [13] at 4–5; Richardson Mem. [15] at 4–5; Smith Mem. [17] at 4–5. In other words, the Individual Defendants do not challenge whether Britton's rights were violated, focusing instead on whether Britton adequately pleaded these defendants' involvement in the disputed decisions. As framed, the argument appears to address the first prong of the qualified-immunity analysis.

        1.     First Prong

       The first prong asks whether Britton has sufficiently pleaded that the Individual Defendants' conduct violated Britton's rights, and that requires an averment that the defendants were personally involved in the alleged deprivation. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Creamer v. Porter*, 754 F.2d 1311, 1316 (5th Cir. 1985). Looking to the Amended Complaint, the Court finds that Britton's factual averments against Lawson, Richardson, and Bass "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 570, and plead sufficient factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. According to Britton, Lawson and Richardson were her supervisors; Britton told them she would not participate in abortion; Lawson was the individual who initially reassigned Britton to a different shift; and both Lawson and Richardson were present when Britton received her termination letter. Am. Compl. ¶¶ 11, 14–15. Finally as to Bass, Britton alleges that she signed Britton's termination letter and was present when it was presented. *Id.* ¶ 15. Assuming these factual allegations are true, as required at this stage, the Court can draw a reasonable inference that Lawson, Richardson, and Bass were personally involved in the disputed employment decisions.

The same cannot be said of Davenport and Smith because those claims are more speculative. At most, Davenport allegedly reported Britton's failure to provide contraception—a fact Britton does not dispute. Am. Compl. ¶ 13. Though the report was perhaps a predicate to Britton's shift reassignment, *id.* ¶ 12, there is no allegation that Davenport herself caused Britton's reassignment, participated in any attempt to accommodate Britton's beliefs, or played a role in her termination. As for Smith, the Amended Complaint merely avers that someone decided to copy her on the termination letter. Even though she was EEO director, the pleaded facts are simply too speculative to conclude that Smith was personally involved in a constitutional deprivation. Based on the allegations in the Amended Complaint, the Court finds Davenport and Smith are entitled to dismissal without prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility result in dismissal of the complaint with prejudice to re-filing.").

>        2.        Second Prong

As discussed above, the thrust of the Individual Defendants' motions and initial briefs was that Britton failed to sufficiently plead their personal involvement in allegedly violating her rights. In their consolidated reply, the Individual Defendants argue that they offered Britton "four (4) separate accommodations . . . in accordance with the guidelines of Title VII and, thus, had a reasonable belief that Britton's constitutional rights were not violated." Defs.' Joint Reply [23] at 3. These defendants then observe that the reasonableness of the accommodations is not the issue at this stage and that the Court must instead decide whether their actions were objectively unreasonable. *Id.*

This argument speaks to the second prong of the qualified immunity analysis. But assuming it should be considered, having been raised in reply, the Individual Defendants fail to support the position with sufficient record, argument, and authority. Specifically, the Individual Defendants claim to have "offered these accommodations in accordance with the guidelines of Title VII" without stating what those guidelines for religious accommodation are under Title VII or why it was objectively reasonable to think the proposed accommodations fell within those guidelines. Given Rule 12(c)'s standard, the complexity of the issues, and the current state of the arguments and record, it would be premature to dismiss these claims.[3]

In summary, the Court finds Britton's federal claims against Lawson, Richardson, and Bass survive the motions to dismiss, but her federal claims against Davenport and Smith are dismissed without prejudice.

B.      State-Law Claims

The Individual Defendants argue that Britton's state-law claims against them are barred by the exclusive remedy provision of the Mississippi Tort Claims Act ("MTCA"). Defs.' Joint Reply [23] at 4. In the MTCA, the Mississippi Legislature first confirmed the state's sovereign immunity "from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, . . . or any such act, omission or breach by any employee of the state or its political subdivisions." Miss. Code Ann. § 11-46-3 (Rev. 2002). The legislature then waived that immunity "from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within

---

[3]The Court is concerned that a ruling would require extensive analysis of issues the parties have only superficially referenced. The better course is to examine the issue at the summary-judgment stage with the benefit of full briefing.

the course and scope of their employment." *Id.* § 11-46-5.  The MTCA now provides the exclusive remedy for recovery for those claims.[4]  *See City of Jackson v. Sutton*, 797 So. 2d 977, 981 (Miss. 2001) (citations omitted) ("The MTCA provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit.").

Finally, and significantly, under the MTCA "no employee shall be held *personally* liable for *acts or omissions* occurring within the course and scope of the employee's duties."  Miss. Code Ann. § 11-46-7(2) (emphasis added).[5]  Instead of personal liability for such employees, the MTCA makes the State responsible.  *See Bolivar Leflore Med. Alliance, LLP v. Williams*, 938 So. 2d 1222, 1226 (Miss. 2006) (citing *Watts v. Tsang*, 828 So.2d 785, 791 (Miss. 2002)).  When this occurs, the employees committing the disputed acts or omissions may be joined "in a representative capacity."  Miss. Code Ann. § 11-46-7(2).

Britton contends that the Individual Defendants acted within the course and scope of their duties, so she concedes that they are personally immune from her state common-law claims—like

---

[4]Section 11-46-7(1) states as follows:

The remedy provided by this chapter against a governmental entity or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or suit; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, *notwithstanding the provisions of any other law to the contrary.*

(Emphasis added).

[5]Contrary to Plaintiff's argument, this section is not limited to "*torts* [committed] in the course of their employment."  Pl.'s Mem. [22] at 19 (emphasis in original).

IIED.  That said, Britton contests personal immunity under the MTCA when applied to her claims against the Individual Defendants under the Conscience Act.  *See* Miss. Code Ann. §§ 41-107-1–41-107-13 (Rev. 2009).

The Conscience Act states that "[a] health care provider has the right not to participate, and no health care provider shall be required to participate in a health care service that violates his or her conscience."  *Id.* § 41-107-5(1).  "Health care provider" is defined as "any individual who may be asked to participate in any way in a health care service," including a nurse.  *Id.* § 41-107-3.  The Act further provides that it is "unlawful for any person . . . to discriminate against a health care provider in any manner based on his or her declining to participate in a health care service that violates his or her conscience."  *Id.* § 41-107-5(3).[6]  Finally, the Conscience Act provides for civil remedies if the Act is violated.[7]

-----

[6]Section 41-107-5(3) states as follows:

It shall be unlawful for any person, health care provider, health care institution, public or private institution, public official, or any board which certifies competency in medical specialties to discriminate against any health care provider in any manner based on his or her declining to participate in a health care service that violates his or her conscience.  For purposes of this chapter, discrimination includes, but is not limited to:  termination, transfer, refusal of staff privileges, refusal of board certification, adverse administrative action, demotion, loss of career specialty, reassignment to a different shift, reduction of wages or benefits, refusal to award any grant, contract, or other program, refusal to provide residency training opportunities, or any other penalty, disciplinary or retaliatory action.

[7]Section 41-107-11 states as follows:

(1) A civil action for damages or injunctive relief, or both, may be brought for the violation of any provision of this chapter.  It shall not be a defense to any claim arising out of the violation of this chapter that such violation was necessary to prevent additional burden or expense on any other health care provider, health care institution, individual or patient.

(2) Damage Remedies. Any individual, association, corporation, entity or

The question is whether the Conscience Act abrogates the personal immunity afforded

state employees under the MTCA.  Unfortunately, the Conscience Act has never been interpreted

in any context.  And because there exists neither binding authority nor the discretion to certify the

issue to the State, the Court must make an *Erie* guess as to how a Mississippi court would

interpret the interplay between these statutes.  *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*,

149 F.3d 378, 382 (5th Cir. 1998).  That task requires resort to the rules of construction applied

by Mississippi courts.  *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000).

Under Mississippi's rules of construction, "[w]here statutes are ambiguous or in conflict

with one another, it is proper to resort to the rules of statutory construction.  The polestar

consideration for this Court is legislative intent.  In determining legislative intent[,] we first look

to the words used in the statute."  *Parsons v. Miss. State Port Auth. at Gulfport*, 996 So. 2d 165,

167 (Miss. Ct. App. 2008) (citing *Miss. Gaming Comm'n v. Imperial Palace of Miss., Inc.*, 751

So. 2d 1025, 1028 (Miss. 1999)) (internal quotation marks omitted).[8]  Looking at the language of

the MTCA and the Conscience Act could reveal some degree of conflict.  If that conflict is

---

health care institution injured by any public or private individual, association,
agency, entity or corporation by reason of any conduct prohibited by this chapter
may commence a civil action.  Upon finding a violation of this chapter, the
aggrieved party shall be entitled to recover threefold the actual damages, including
pain and suffering, sustained by such individual, association, corporation, entity or
health care institution, the costs of the action, and reasonable attorney's fees; but
in no case shall recovery be less than Five Thousand Dollars ($5,000.00) for each
violation in addition to costs of the action and reasonable attorney's fees.  These
damage remedies shall be cumulative, and not exclusive of other remedies
afforded under any other state or federal law.
     (3) Injunctive Remedies. The court in such civil action may award
injunctive relief, including, but not limited to, ordering reinstatement of a health
care provider to his or her prior job position.

[8]The Court has found no relevant legislative history.

"irreconcilable," then the Conscience Act would take precedence because it is the newer and more specific statute. *Parkerson v. Smith*, 817 So. 2d 529, 533 (Miss. 2002).

Conversely, if the conflict is not irreconcilable, then the Court turns to the rule that "[s]tatutes dealing with the same or similar subject matter must be read *in pari materia* and to the extent possible, each section of the Code must be given effect so that the legislative intent can be determined." *Fid. & Guar. Ins. Co. v. Blount*, 63 So. 3d 453, 465 (Miss. 2011) (en banc).  Said differently, "[s]tatutes on the same subject, although in apparent conflict, should if possible be construed in harmony with each other to give effect to each." *Buckel v. Chaney*, 47 So. 3d 148, 158 (Miss. 2010) (citations and quotation marks omitted).

Harmony is possible in this instance because the Conscience Act never expressly says that state employees are subject to personal liability or that damages may be recovered from them individually.  Section 41-107-5(3) makes it unlawful for "any person," or "public official" to violate the Act.  The Conscience Act then states in section 41-107-11(1) that a civil action "may be brought for the violation of any provision of this chapter" but fails to say *against whom* the cause of action should be brought.  Section 41-107-11(2) adds that anyone injured "by any public or private individual" may seek damages.  But again the statute is silent as to the defendants from whom damages may be recovered.

As stated above, section 11-46-7(2) of the MTCA precludes an individual's personal liability for acts or omissions occurring "within the course and scope of the employee's duties."  Here, it is undisputed that the Individual Defendants acted within the course and scope of their employment.  Thus, the State is responsible for their acts and omissions. *Bolivar Leflore Med. Alliance, LLP*, 938 So. 2d at 1226 (citation omitted).  And because the Conscience Act was

13

passed after the MTCA, it is "presumed to have been enacted in light of earlier enactments." *Parkerson v. Smith*, 817 So. 2d 529, 533 (Miss. 2002). In other words, "[t]he Legislature is presumed to know the effect which its former laws had . . . ." *Gully v. Harrison Cnty.*, 173 Miss. 402, 162 So. 166 (1935). In this case, that includes immunity from personal liability.

Finally, had the Mississippi legislature intended to abrogate immunity from personal liability found in the MTCA, then it could have easily accomplished that goal. Instead, the Conscience Act makes no reference to the MTCA and remains silent as to whom a plaintiff may sue or from whom damages may be obtained. The MTCA and the Conscience Act may be read in harmony by construing the Conscience Act as creating a new cause of action against the State for the acts or omissions of its employees, to be pursued within the existing framework of the MTCA. This reading is also consistent with the MTCA's exclusivity provision. Miss. Code Ann. § 11-46-7(1).[9]

IV.    Conclusion

Britton's federal claims against Lawson, Richardson, and Bass survive the motions to dismiss, but her federal claims against Davenport and Smith are dismissed without prejudice. Britton's state-law claims are dismissed as to the Individual Defendants in their individual capacities. Finally, the parties are ordered to contact the magistrate judge to set the matter for case-management conference.

**SO ORDERED AND ADJUDGED** this the 31st day of May, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[9]The Court expresses no opinion as to whether the alleged acts or omissions were the sort of ministerial functions covered under section 11-46-9(1)(b) of the Mississippi Code. *See* Defs.' Joint Reply [23] at 4.

14